# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CHARLES SMITH,                                          Civil Action No. 1:09-cv-251
      Petitioner,

                                Dlott, J.
   vs.                                                  Black, M.J.

WARDEN, LEBANON CORRECTIONAL
INSTITUTION,                                           **REPORT AND**
      Respondent.                                **RECOMMENDATION**

Petitioner, a state prisoner, brings this case *pro se* seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition (Doc. 1), respondent's return of writ and exhibits thereto (Doc. 7), and petitioner's memoranda in support of the petition. (Docs. 10, 11, 12, 13).

## I. PROCEDURAL HISTORY

This case involves the following facts, as summarized by the First District Ohio Court of Appeals:[1]

> On May 29, 2005, Cincinnati police officers Jason Rees and Josh Schrage were on patrol in the Over-the-Rhine area of Cincinnati.  The officers employed a technique in which they stopped their car short of a traffic light so that they were not seen. When the light turned green, they approached the corner and quickly turned left on to Lang Street. While the officers were making the turn, they heard someone yell, "Boys, boys."  Officer Rees testified that "boys" was a common warning given when police officers were spotted in the area.  Rees saw Smith, who had been standing on the street, move quickly to a garbage can on the street.  Rees stated that Smith had something clenched in his hand.  According to Rees, Smith very deliberately placed something in the garbage can.  Officer Schrage testified that Smith, had leaned into the can and placed something there.  While Rees detained Smith, Schrage recovered a bag from the garbage can.  The substance in the bag was later determined to be ten grams of crack cocaine.  At the time of his arrest, Smith had $526 in his possession. The state also presented evidence that the offenses had taken place within 1000 feet of St. Francis Seraph School.
>
> In his defense, Smith presented Teangela Pernell.  Pernell testified that the bag of

---

[1]  The factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

crack cocaine was hers. According to Pernell, she had found the bag on the street and had placed it in the garbage. And she stated that she was near the can when the officers arrived at the scene. But on rebuttal, Schrage testified that he had not seen Pernell near the scene.

(Doc. 7, Exh. 9 at 1-2).

## State Trial Court Proceedings

Petitioner was indicted on one count of possession of cocaine and one count of trafficking in cocaine. (Doc. 7, Exh. 1). Upon arraignment, he pleaded not guilty.

On July 15, 2005, petitioner filed a motion for the appointment of an expert for the purpose of analyzing and weighing the substance the State alleged to be crack cocaine. (Doc. 7, Exh. 2). The trial court granted the motion, but specified that petitioner "shall pay for any costs incurred to retain and secure testing and testimony of his expert." (Doc. 7, Exh. 3). Petitioner filed a motion for rehearing on the appointment of an expert at his own expense, alleging that he did not have the funds to hire an expert. (Doc. 7, Exh. 4). The trial court determined that since petitioner retained counsel and was no longer indigent, he had the right to get an expert but not at the expense of the court. (Doc. 7, Transcript at 18-19).

Following a jury trial, petitioner was convicted on both counts of the indictment. He was sentenced to five years incarceration on the possession of cocaine conviction and 10 years on the trafficking in cocaine conviction, to be served consecutively for an aggregate sentence of 15 years. (Doc. 7, Exh. 5).

## Direct Appeal

On February 14, 2006, petitioner, through counsel, filed a timely notice of appeal (Doc. 7, Exh. 6) and raised the following assignments of error on appeal:

1. The trial court erred to the prejudice of Appellant by not allowing the jury to

view the scene of the alleged crime.

2. The court erred to the prejudice of the Appellant by not finding purposeful discrimination by the State against African-American females during voir dire.

3. The trial court erred to the prejudice of the Defendant-Appellant by not granting the Rule 29 motion as there was insufficient evidence to convict.

4. The trial court erred to the prejudice of the Defendant-Appellant because the verdict was against the manifest weight of the evidence.

(Doc. 7, Exhs. 6, 7). The state filed a brief in opposition. (Doc. 7, Exh. 8). On June 6, 2007, the

Ohio Court of Appeals affirmed the judgment of the trial court. (Doc. 7, Exh. 9).

On July 17, 2007, petitioner, through counsel, filed a timely appeal with the Ohio Supreme

Court and raised the following propositions of law:

1. Trafficking in drugs in violation of R.C. 2925.03(A)(2) and possession of the very same drugs, in violation of R.C. 2925.11(A) are allied offenses of similar import, and, while an offender may be indicted for both offenses he may be convicted and sentenced on only one of them.

2. The exercise of peremptory jury challenges by the State to exclude African-American women from the jury trying an African-American defendant for crime (sic) violates the Fourteenth Amendment right to the equal protection of the law, as such use of peremptories constitutes racially and gender based discrimination.

3. Under the Fourteenth Amendment rights to equal protection of the law, and to due process of law, an expert should be appointed to assist an indigent defendant where there is a reasonable probability that the expert could aid the defense.

4. It is a violation of the Defendant's right to confrontation and to due process of law for the trial court to admit a laboratory report with conclusions as to the nature and quantity of a suspected controlled substance without requiring the testimony in open court by the expert who did the testing and prepared the report.

5. It is error prejudicial to the rights of the accused under the due process clause to amend the indictment/bill of particulars to change the charge from being committed within 1000 feet of a specific school to having been committed within 1000 feet of a completely different school.
6. Where trial counsel in a criminal case provides representation which undermines the functioning of the adversary process so that the trial cannot be relied upon as

having produced a just result, the Defendant has been denied his Sixth Amendment right to effective counsel.

7.  Where appointed appellate counsel for an indigent Appellant fails to raise on the initial direct appeal several crucial issues involving deprivation of rights under the Constitution and laws of the United States, then the accused Defendant-Appellant has not rendered effective assistance of counsel, in violation of his Sixth and Fourteenth Amendments.

8.  Where there is insufficient evidence of one or more essential elements of the offense, it is error violative of the Defendant's right to due process under the 14th Amendment for the trial court to enter judgment of conviction.

9.  Egregious prosecutorial misconduct which deprives the Defendant in a criminal case of a fair trial violates his right to due process of law under the Fourteenth Amendment, and his conviction must be reversed.

10.  A Defendant sentenced to more than a minimum sentence, and/or to consecutive sentences based on aggravating facts not found by a jury violate the right of the accused to [a] jury trial, secured to him by the Sixth Amendment, and the sentences must be reversed.

(Doc. 7, Exhs. 10, 11).  The state filed a memorandum in response (Doc. 7, Exh. 12) and on

October 24, 2007, the Supreme Court of Ohio denied leave to appeal and dismissed the appeal as

not involving any substantial constitutional question. (Doc. 7, Exh. 13).

### Application for Reopening Under Ohio App. R. 26(B)

In the meantime, on August 31, 2007, plaintiff, through counsel, filed an application to

reopen his direct appeal on the basis of the ineffective assistance of appellate counsel pursuant to

Ohio App. R. 26(B). (Doc. 7, Exh. 17).  Petitioner alleged appellate counsel was ineffective by

failing to raise in the initial appeal the following assignments of error (in addition to the original

four claims raised):

5.  The trial court erred to the prejudice of Appellant by entering judgment of conviction and consecutive sentences (1) for possession and (2) for trafficking of the identical drugs.

6.  The trial court erred to the prejudice of Appellant by refusing his request for funds to hire a defense expert to assist the defense, and to testify, with respect to the nature and quantity of the substance recovered by police.

7.  The trial court erred in violation of Appellant's Sixth Amendment right of confrontation in admitting the laboratory report without requiring testimony from the expert who did the test and who prepared the report.

8.  The trial court erred to the prejudice of Appellant's 14th Amendment right to proper notice and to the requirement of an indictment in felony cases under the Ohio Constitution by permitting the State to amend the bill of particulars to change the "school," within 1000 feet of which the Appellant was said to have committed the offenses.

9.  Appellant was denied his Sixth Amendment right to effective assistance of [trial] counsel.

10.  Appellant was denied his Sixth Amendment right to effective assistance of appellate counsel.

11.  The trial court erred in entering judgment of conviction, and in imposing an excessive sentence in the absence of proof of an essential element of the offense.

12.  Egregious prosecutorial misconduct which deprives the Defendant in a criminal case of a fair trial violates his right to due process of law under the Fourteenth Amendment, and his conviction must be reversed.

13.  A Defendant sentenced to more than a minimum sentence, and/or to consecutive sentences based on aggravating facts not found by jury, has been denied his Sixth Amendment right to trial by jury.

(Doc. 7, Exh. 17).  The State filed a response to the application for reopening the appeal. (Doc. 7, Exh. 18).  On April 15, 2008, the appellate court granted petitioner's application for reopening. (Doc. 7, Exh. 19).  However, on the state's motion for reconsideration, the Ohio Court of Appeals limited the reopening to the fifth assignment of error only. (Doc. 7, Exhs. 20-22).  Petitioner's subsequent motion for reconsideration to consider all of the assignments of error on reopening was

denied. (Doc. 7, Exhs. 23, 24). On September 17, 2008, the Ohio Court of Appeals reversed the trial court's judgment regarding petitioner's sentence and remanded the case for resentencing. (Doc. 7, Exhs. 25-27).

Petitioner moved for reconsideration of that decision, seeking review of the additional eight assignments of error raised in his application for reopening. The Ohio Court of Appeals denied the motion. (Doc. 7, Exhs. 28-30).

Petitioner timely appealed to the Supreme Court of Ohio and raised the following proposition of law:

> The Sixth Amendment and App. R. 26(B)(6) require a court of appeals, which grants an application to reopen appeal, to reopen the appeal as to each and every issue raised by the Appellant in his 26(B) application, or, with respect to each such issue to which reopening is denied, to state in writing the reasons the court denied the application.

(Doc. 7, Exh. 32). On February 18, 2009, the Supreme Court of Ohio denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Doc. 7, Exh. 33).

## Resentencing

In accordance with the Ohio Court of Appeals' ruling, petitioner was resentenced on October 29, 2008 to ten years incarceration for the trafficking in cocaine conviction. (Doc. 7, Exh. 34). Petitioner did not appeal this sentence.

## II. FEDERAL HABEAS CORPUS

Petitioner filed the instant *pro se* petition for a writ of habeas corpus setting forth the following grounds for relief:

**GROUND ONE:** Petitioner's right to equal protection was violated by the systemic exclusion of jurors by the state based on race.

**Supporting Facts:** The prosecutor, over objection, was permitted to challenge and

dispose of two female African-American venire persons based upon clearly pretextual purported "race-neutral" explanations which were patently and blatantly designed to exclude the jurors based solely upon race and gender.

**GROUND TWO**: Petitioner was deprived of equal protection and due process by the trial court's refusal to allot funds for an essential expert witness.

**Supporting Facts:** Petitioner timely and properly moved for the appointment of an expert to examine the content and quantity of the alleged cocaine. The trial court agreed to allow the expert to examine the material, but refused to allow state funding, even after reconsideration and a demonstration of both particularized need for the expert and financial inability for the petitioner to retain the expert.

**GROUND THREE:** Petitioner's Confrontation Clause rights were violated by the trial court admitting a lab report into evidence without any supporting testimony.

**Supporting Facts:** After denying Petitioner funds for an expert, the trial court admitted the prosecutor's lab report as to the nature and quantity of the alleged cocaine without requiring the testimony of the expert who prepared the report and did the testing, despite being place on notice that the defense was challenging both the nature and quantity of the substance.

**GROUND FOUR:** Petitioner was deprived of due process notice of charges by the amendment of the indictment.

**Supporting Facts:** Petitioner was charged with possession and trafficking of cocaine with the added element of 'within 1000 feet of the Vine St. Elementary School' which elevates the degree of felony. The indictment was amended to change the name and identity of the school, which deprived Petitioner of sufficient notice to adequately prepare a defense.

**GROUND FIVE:** Petitioner was deprived of the effective assistance of counsel at trial, prejudicing the results of the proceedings, in violation of the Sixth and Fourteenth Amendments.

**Supporting Facts:** Trial counsel failed to raise proper objections to unconstitutional procedures, including prosecutorial misconduct in argument, the admission of a lab report without any testimony from a live witness, where the lab report purported to constitute prima facie evidence of two primary essential elements of the charged offenses, and the imposition of an unlawful and unconstitutionally enhanced sentence, each of which prejudiced the results of the proceedings, and the results of the appeal by subjecting the issues to a higher level of scrutiny and a more stringent standard of review.

**GROUND SIX:** Petitioner was deprived of the effective assistance of counsel on direct appeal, prejudicing the results of the appeal, in violation of the Sixth and Fourteenth Amendments.

**Supporting Facts:** Appointed appellate counsel failed to raise significant and obvious issues of constitutional magnitude with a reasonable probability of success on appeal, including the allied offenses claim that ultimately resulted in reversal; ineffective trial counsel; unlawfully enhanced sentence; denial of expert witness; introduction of unsupported lab report denying confrontation; unconstitutional amendment of the indictment and prosecutorial misconduct, which prejudiced the results of the appeal.

**GROUND SEVEN:** Petitioner was deprived of due process of law by entering a judgment of conviction in the absence of sufficient evidence to prove each essential element of the charged offense beyond a reasonable doubt.

**Supporting Facts:** A review of the record demonstrates that no evidence was adduced at trial to prove that the building identified as "St. Francis Seraph School" was in any way a "School" as defined under Ohio law, and as required to prove the essential element of the charge of Trafficking in cocaine within 1000 feet of a school.

**GROUND EIGHT:** Petitioner was deprived of a fair trial and due process of law by prosecutorial misconduct during argument to the jury.

**Supporting Facts:** During arguments, the prosecutor called the defense witness a liar; vouched for the credibility of state witnesses, specifically asking the jury to believe one police officer because he was a former Secret Service agent, and expressed his personal opinion that Petitioner was guilty, while making derogatory remarks about Appellant and the sole defense witness.

**GROUND NINE:** Petitioner was deprived of due process and trial by jury by the imposition of a sentence that exceeded the statutory maximum based upon judicial fact finding of elements never alleged to enhance the sentence beyond the three year presumptive statutory maximum sentence to ten years.

**Supporting Facts:** Ohio law provides that the presumptive maximum sentence is the shortest term set forth by statute, unless additional elements are established. This term is three years for a first degree felony.

Petitioner's sentence was enhanced to ten years in the absence of any allegation of the requisite additional elements, and in the absence of proof beyond a reasonable doubt, found by a jury, rendering the sentence violative of the constitution and requiring the sentence to be reduced to three years, which Petitioner has more than fully served. (Doc. 1).

## II. STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).  *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001).  This Court is bound by the state court adjudications unless those decisions are contrary to or an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

> 1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> 2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A legal principle is "clearly established" for purposes of habeas corpus review  "only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes*, 130 S. Ct. 1171, 1173 (2010).

> The phrases "contrary to" and "unreasonable application" have independent meanings: A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in . . . [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts.  The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case.  The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable . . . and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

If a state court does not articulate the reasoning behind its decision or fails to adjudicate the constitutional issues, the AEDPA deferential standard of review set forth in section 2254(d) is inapplicable. *See Wiggins v. Smith,* 539 U.S. 510, 534 (2003); *Towns v. Smith*, 395 F.3d 251, 257 (6th Cir. 2005); *see also Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004) (citing *Maples v. Stegall*, 340 U.S. 433, 436 (6th Cir. 2003) ("Where as here, the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.")). Under these circumstances, the constitutional claim is reviewed *de novo* and the Court considers "the totality of the evidence-'both that adduced at trial, *and the evidence adduced in the habeas proceeding[s].*'" *Wiggins,* 539 U.S. at 536 (emphasis in the original) (quoting *Williams v. Taylor,* 529 U.S. 362, 397-98 (2000)). *Accord Clinkscale*, 375 F.3d at 436.

## III. GROUND ONE OF THE PETITION SHOULD BE DENIED.

Ground One of the petition asserts petitioner's right to equal protection was violated by the State's systematic exclusion of African American jurors on the basis of race in violation of *Batson v. Kentucky,* 476 U.S. 79 (1986).

Exclusion of individuals from a jury based on race violates the Equal Protection Clause of the United States Constitution. *Batson v. Kentucky*, 476 U.S. 79 (1986). *Batson* forbids race-based peremptory challenges by a prosecutor. A trial court must engage in a three-step process to evaluate a *Batson* claim:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell*, 537 U.S. 322, 328-329 (2003) (internal citations to *Batson* omitted).

To make a *prima facie* showing of purposeful discrimination by the prosecutor, a defendant

must show he is a member of a cognizable racial group; the prosecutor has exercised peremptory challenges to remove from the jury members of the defendant's race; and any additional facts and circumstances from which an inference could be drawn that the prosecutor used the peremptory challenges to exclude persons from the petit jury on account of their race. *Batson,* 476 U.S. at 96.

Once the defendant makes a *prima facie* showing of purposeful discrimination, the burden shifts to the State to come forward with a race-neutral explanation for challenging black jurors. *Batson,* 476 U.S. at 97. This is an extremely light burden. *Purkett v. Elem,* 514 U.S. 765, 768 (1995) (per curiam). At this step of the inquiry, the explanation tendered by the prosecutor need not be persuasive nor even plausible. *Id.* As the Supreme Court explained in *Hernandez*: "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez,* 500 U.S. at 360 (plurality opinion).

At the third step of the process, the court must determine whether the defendant has established purposeful discrimination. *Hernandez,* 500 U.S. at 359, 363 (plurality opinion) (citing *Batson,* 476 U.S. at 98). In making this determination, the trial court must assess the plausibility and persuasiveness of the prosecutor's race-neutral explanation. *Rice v. Collins*, 546 U.S. 333, 338 (2006); *Miller-El v. Dretke*, 545 U.S. 231, 252 (2005). "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett,* 514 U.S. at 768. "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step." *Miller-El v. Dretke,* 545 U.S. 231, 241 (2005).

11

The trial court's decision at this step is accorded "great deference" by a reviewing court. *Hernandez,* 500 U.S. at 364 (plurality opinion); *see also Batson,* 476 U.S. at 98 n.21. "Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because . . . the finding 'largely will turn on evaluation of credibility.'" *Hernandez,* 500 U.S. at 365 (plurality opinion) (quoting *Batson,* 476 U.S. at 98 n.21)).

In the typical case, the decision will turn on whether counsel's race-neutral explanation for a peremptory challenge should be believed, wherein there "will seldom be much evidence bearing on that issue" and the "best evidence often will be the demeanor of the attorney who exercises the challenge." *Id.* "[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'"*Id.* (quoting *Wainwright v. Witt,* 469 U.S. 412, 428 (1985)). In determining the credibility of the prosecutor's race-neutral explanations, the court must consider the prosecutor's demeanor, how reasonable or how improbable the explanations, and whether the proffered explanation has some basis in accepted trial strategy. *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003).

A trial judge's ruling that the challenge was race-neutral must be upheld unless it is clearly erroneous. *Snyder v. Louisiana,* 552 U.S. 472, 477 (2008) (citing *Hernandez*, 500 U.S. at 369). In federal habeas corpus proceedings such as this, the state courts' factual findings on this issue are presumed correct unless petitioner demonstrates by clear and convincing evidence that such findings are erroneous. 28 U.S.C. § 2254(e)(1); *Purkett,* 514 U.S. at 769; *Hernandez,* 500 U.S. at 366 (plurality opinion). "Thus, a federal habeas court can only grant [the] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge." *Rice,* 546 U.S. at 338.

In this case, the *Batson* issue arose when the prosecutor exercised peremptory challenges to

excuse two prospective African-American jurors.  The State first exercised a peremptory challenge against Prospective Juror Alicia Taylor, an African-American. (Doc. 7, Vol. 4, Tr.  125-127). Petitioner objected based on *Batson v. Kentucky*. (*Id*. at Tr. 126).  In support of the challenge, the prosecutor explained that Ms. Taylor stated she felt uncomfortable sitting on this jury and did not want to be sitting on the jury.  The prosecutor stated he did not want a prospective juror who does not want to be there because in "my experience, those types of jurors don't really work well for me." (*Id*. at Tr. 126).  Based on the "race neutral reason" offered by the prosecution, the trial judge overruled petitioner's *Batson* challenge. (*Id.* at Tr. 127).

The prosecutor also exercised a peremptory challenge to excuse Prospective Juror Crystal Coles, another African-American. (*Id*. at Tr. 138).  Defense counsel objected on the basis of *Batson*. (*Id*. at Tr. 139).  By way of explanation, the prosecutor stated:

> [I]f you take a look at Ms. Coles' questionnaire, it says that she lives on West 13th Street, which is the neighborhood very close to the neighborhood where this actually occurs.  Additionally, that says she's a single mother with three children.  She does not possess the type of judgment that I want in a juror sitting on my jury.

(*Id*. at Tr. 139-40).  The trial court determined that the prosecutor "stated a race neutral reason" for the peremptory challenge that the judge was willing to accept based on the prosecutor's word and overruled petitioner's *Batson* objection. (*Id*. at Tr. 140).

Petitioner challenged the trial court's rulings on direct appeal.  The Ohio Court of Appeals, which was the last state court to render a reasoned decision addressing the merits of petitioner's *Batson* claim, properly considered the issue utilizing the three-step analysis discussed above as clearly established by Supreme Court precedents.  The Court of Appeals rejected petitioner's claim of constitutional error, reasoning in pertinent part as follows:

> Smith's second assignment of error is that the trial court erred when it allowed the state to use two of its peremptory challenges to exclude African-American women

from the jury. Smith contends that the exercise of the challenges amounted to a violation of *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct.1712.

The discriminatory, use of peremptory challenges to exclude members of a minority group violates the Equal Protection Clause of the United States Constitution. Id. In *State v. White*, the Ohio Supreme Court discussed the three-step procedure for evaluating *Batson* challenges. 85 Ohio St.3d 433, 1999-Ohio-281, 709 N.E.2d 140. See, also, *State v. Jordan*, 1st Dist. No. C-040897, 2006-Ohio-2759. "First, the opponent of the strike must make a prima facie showing of discrimination. Second, the proponent must give a race-neutral explanation for the challenge. Third, the trial court must determine whether, under all the circumstances, the opponent has proven purposeful racial discrimination." *White*, supra, at 436, citing *Batson*, supra, at 96-98, *Purkett v. Elem* (1995), 514 U.S. 765, 767-768, 115 S.Ct. 1769, and *State v. Hernandez (*1992), 63 Ohio St.3d 577, 582, 589 N.E.2d 1310. We will reverse a trial court's determination that the state did not have a discriminatory intent only if it was clearly erroneous. *State v. Hernandez* (1992), 63 Ohio St.3d 577, 583, 589 N.E.2d 1310.

The prosecutor used two of his peremptory challenges to excuse prospective jurors Taylor and Coles, both African-American women. Because the state did not challenge whether Smith had met his initial burden to show prima facie discrimination, we turn to the second step of the inquiry-whether the state gave a race-neutral explanation for exercising the challenges. The prosecutor's explanation "need not rise to the level justifying the exercise of a challenge for cause." *Batson*, supra, at 97. "At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral." *Hernandez v. New York* (1991), 500 U.S. 352, 360, 768, 111 S.Ct. 859.

In this case, the prosecutor's explanation for excusing Taylor was that she had stated that she did not want to sit on the jury. The trial court correctly determined that this was a race-neutral explanation. The prosecutor later excused Coles. When challenged by Smith's counsel, the prosecutor explained that he wanted to excuse Coles because she lived near the area where the offenses had allegedly occurred and-because, as a single mother with three children, "[s]he [did] not possess the type of judgment that I want in a juror sitting on my jury." While we may disagree with the prosecutor's reasoning, we conclude that both reasons given were racially neutral.

Having concluded that the trial court properly concluded that the reasons given by the prosecutor were race-neutral, we move to the last step of the inquiry—whether Smith proved purposeful discrimination. Because the review of the prosecutor's intent hinges mainly on issues of his credibility, we defer to the trial court's findings. *Batson*, supra, at 98. "There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." *State v. Brown*, 2nd Dist. No. 19236, 2003-0hio-2683. ¶29. The trial

court is in the best position to judge the attorney's demeanor. Here, the trial court overruled Smith's *Batson* challenges. Our review of the record leads us to conclude that the trial court's determination was not clearly erroneous. Even if we believe that the prosecutor's opinions regarding Coles's status as a single mother were misguided, nothing in the record indicates-that his reasons for excusing Coles were pretexts for discrimination. The second assignment of error is overruled.

(Doc. 7, Exh. 9 at 3-4).

The undersigned concludes that the First District Court of Appeals' decision on petitioner's *Batson* claim was not an objectively unreasonable application of *Batson* and its progeny. Petitioner established that he and the two prospective jurors who were excused are African American. However, the explanations given by the prosecution were facially valid and race neutral. In addition to the reasons set forth by the Court of Appeals, this Court notes that petitioner has pointed to nothing in the record to suggest that the prosecutor's justifications for striking Ms. Taylor and Ms. Cole similarly applied to non-minority jurors who were not struck from the panel. *Cf. Miller-El v. Dretke*, 545 U.S. 231, 241 (2005). In *Miller-El,* the Supreme Court recognized that "[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step." This comparative juror analysis is inapplicable in the instant case where petitioner has pointed to no evidence demonstrating that white jurors possessed the same characteristics for which Ms. Taylor and Ms. Cole were stricken. Thus, this is not a case where the prosecutor's proffered explanation for striking an African American juror applied to an otherwise-similar non-African American juror who was permitted to serve. *Cf. Miller-El,* 545 U.S. at 241. The trial judge accepted the prosecutor's explanations as credible and petitioner has not met his burden of showing that it was "unreasonable to credit the prosecutor's race-neutral explanations." *Rice,* 546 U.S. at 338. The prosecutor's explanations

evinced no inherent discriminatory intent and are deemed race-neutral. *See Purkett,* 514 U.S. at

768 (finding prosecutor's proffered reason for striking an African-American prospective juror–that

he had a moustache, beard, and long, unkept hair–satisfied burden of articulating a

nondiscriminatory reason for peremptory challenge). While petitioner argues that the reasons

proffered by the prosecutor are "pretextual" (Doc. 10 at 8), he fails to explain why. Petitioner has

neither cited nor submitted clear and convincing evidence of purposeful discrimination by the

prosecution sufficient to rebut the presumption of correctness to be accorded the state courts'

conclusion that the prosecutor did not discriminate on the basis of race in exercising the peremptory

challenges in this case. *See* 28 U.S.C. § 2254(e)(1); *Purkett,* 514 U.S. at 769; *Hernandez,* 500 U.S.

at 364-66; *Batson*, 476 U.S. at 98 n.21. Upon review of the trial transcript, the undersigned agrees

with the Ohio Court of Appeals' determination that the record supports the factual bases for the

state's peremptory challenges as to prospective jurors Taylor and Cole.

Accordingly, petitioner has not demonstrated that the state courts' adjudication of his

*Batson* claim resulted in a decision that is contrary to, or involves an unreasonable application of,

clearly established Supreme Court precedent, or is based on an unreasonable determination of the

facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. §2254(d); *see*

*also Williams,* 529 U.S. at 402-03 (O'Connor, J.). Ground One of the petition should be denied.

## IV.  GROUNDS TWO THROUGH NINE ARE PROCEDURALLY DEFAULTED AND WAIVED.

In recognition of the equal obligation of the state courts to protect the constitutional rights

of criminal defendants, and in order to prevent needless friction between the state and federal

courts, a state defendant with federal constitutional claims must first fairly present those claims to

the state courts for consideration before raising them in a federal habeas corpus action. *See* 28

U.S.C.

§ 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985). If the petitioner fails to do so, he may have waived the unraised claims for purposes of federal habeas corpus review. *See Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas review
> of the claims is barred unless the prisoner can demonstrate cause for the default, and
> actual prejudice as a result of the alleged violation of federal law, or demonstrate
> that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, *e.g.*, to make a contemporaneous objection or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

Federal courts may not consider "contentions of federal law that are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). If petitioner fails to fairly present his

claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001), *cert. denied*, 535 U.S. 1031 (2002) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In determining whether a state court rested its holding on a procedural default so as to bar federal habeas review, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991)). Normally, a federal habeas court will find that a petitioner procedurally defaulted if the last state court rendering a decision makes a plain statement to that effect. *Harris,* 489 U.S. at 261. No such statement is necessary, however, if the petitioner failed to present the relevant issues to the state court. *Id.* at 263 n. 9; s*ee also Teague v. Lane*, 489 U.S. 288, 297-298 (1989) (plurality opinion)

("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). In that event, the federal habeas court may hold the claim procedurally defaulted "if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

If, because of a procedural default, a petitioner can no longer present his claims to a state court, he has waived them unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

Ground Two of the petitioner challenges the denial of an expert witness at petitioner's trial. Ground Three asserts the trial court erred by admitting a lab report without supporting testimony. Ground Four challenges the amendment of the indictment at trial as violating due process. Grounds Five and Six raise the ineffective assistance of trial and appellate counsel respectively. Ground Seven alleges there was insufficient evidence to convict. Ground Eight asserts a claim of prosecutorial misconduct. Ground Nine challenges the imposition of a maximum sentence in violation of *Blakely v. Washington*, 542 U.S. 296 (2004). As explained below, each of these grounds for relief has been procedurally defaulted.

**A. Grounds Two through Five, Eight, and Nine are procedurally defaulted.**

The constitutional claims alleged in Grounds Two, Three, Four, Five, Eight, and Nine of the petition were not raised on direct appeal to the Ohio Court of Appeals. Petitioner's failure to raise these issues as independent claims of error to the state appellate court on direct appeal of his

conviction and sentence means he has procedurally defaulted these claim on habeas review. Ohio

law provides that an issue not raised on direct appeal is barred by the doctrine of res judicata. *See*

*State v. Combs*, 100 Ohio App.3d 90, 97, 652 N.E.2d 205, 209 (Ohio Ct. App. 1994) (holding that

res judicata stops post-conviction relief for claims that could have been raised on direct appeal);

*State v. Perry*, 10 Ohio St.2d 175, 175- 76, 226 N.E.2d 104, 105-06 (syllabus). The Sixth Circuit

Court of Appeals has consistently recognized that under Ohio law an issue that is not raised by a

petitioner on direct appeal is barred from subsequent review based on the doctrine of res judicata.

*See, e.g ., Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998) (recognizing procedural default of a

claim in habeas petition where appellant never raised the claim on direct appeal to the Ohio Court

of Appeals and the Ohio Supreme Court); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994) (finding

adequate and independent state procedural rule where new claims raised in his second motion for

leave to file a delayed direct appeal were barred by the Ohio Court of Appeals as res judicata

because the petitioner had opportunity to raise constitutional claims during delayed direct appeal

but failed to do so); *Leroy v. Marshall,* 151 F.2d 94, 100 (6th Cir. 1985) (holding as adequate and

independent state grounds the procedural default of claims raised for the first time in a petition for

writ of habeas corpus on the basis of res judicata where petitioner failed to raise those claims in his

direct appeal to the Ohio Court of Appeals and to the Ohio Supreme Court).

Although petitioner raised these claims in his appeal to the Ohio Supreme Court, that action

in itself did not preserve the claims for habeas review. "The Ohio Supreme Court has stated that it

will not consider constitutional claims not raised and preserved in the Ohio Court of Appeals. *State*

*v. Phillips,* 27 Ohio St.2d 294, 272 N.E.2d 347, 352 (1971); *State v. Lynn,* [5 Ohio St.2d 106, 214

N.E.2d 226, 229 (1966).]" *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985) (quoting *Fornash v.*

*Marshall*, 686 F.2d 1179, 1185 n.7 (6th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983)). Since

petitioner failed to raise the claims set forth in Grounds Two, Three, Four, Five, Eight, and Nine in

the Ohio Court of Appeals, these claims were not preserved for appeal to the Ohio Supreme Court.

*Leroy*, 757 F.2d at 99. District courts within the Sixth Circuit "have consistently found Ohio's

procedural rule requiring claims to be presented in the lower appellate court prior to being

presented to the Ohio Supreme Court to be an adequate and independent state ground upon which

the state can rely to foreclose review of a federal constitutional claim." *Shank v. Mitchell*, No. 2:00-

cv-17, 2008 WL 4449567, at *43 (S.D. Ohio Sept. 30, 2008) (Marbley, J.) (citations omitted).

Thus, Grounds Two, Three, Four, Five, Eight, and Nine of the petition are procedurally defaulted.

**B. Ground Seven is procedurally defaulted.**

Ground Seven of the petition raises a sufficiency of the evidence claim based on the state's

alleged failure to prove that the building identified as "St. Francis Seraph School" was a "school"

under Ohio law, an essential element of the drug trafficking charge. While petitioner did raise a

sufficiency of the evidence claim on direct appeal, he presented a completely different theory of

this claim in the Ohio Court of Appeals than he now asserts in the habeas corpus petition. In the

state appellate court, petitioner claimed there was insufficient evidence to convict him of

"possession" since another witness testified the drugs belonged to her. (Doc. 7, Exh. 7 at 8-9). He

also argued there was insufficient evidence to convict him on the "trafficking" charge since none of

the normal indicia of selling (*e.g.*, presence of a scale, knife to cut the drugs, cell phones, or

transaction) were present. *Id*. However, petitioner did not dispute the "school" element of the

trafficking offense in the Ohio Court of Appeals as he does now in this federal court.

The "fair presentation" requirement mandates that habeas petitioners present claims in their

federal habeas proceeding under the same theory as presented in the state court. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Where a habeas claim rests on theories which are separate and distinct from those raised in state court, it is procedurally defaulted. *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002). *See also Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001) ("relatedness" of a claim will not save it; same claim based on factually dissimilar premises does not constitute fair presentation to state court). Since the sufficiency of the evidence claim raised in Ground Seven was not fairly presented on direct appeal to the Ohio Court of Appeals, petitioner has procedurally defaulted this claim.

**C. Petitioner's Ohio App. R. 26(B) application does not save Grounds Two through Five and Seven through Nine from being procedurally defaulted.**

The Court notes that petitioner raised the claims asserted in Grounds Two through Nine in connection with his Rule 26(B) application to reopen the direct appeal based on the ineffective assistance of appellate counsel. Ground Six of the petition, which alleges a claim of ineffective assistance of appellate counsel, was fully exhausted through the state courts. Nevertheless, petitioner's Rule 26(B) application did not preserve the merits of Grounds Two through Five and Seven through Nine for habeas review. *See Davie v. Mitchell,* 547 F.3d 297, 312 (6th Cir. 2008). "[B]ringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'" *Id.* (quoting *White v. Mitchell,* 431 F.3d 517, 526 (6th Cir. 2005)). Consequently, by failing to raise the claims asserted in Grounds Two through Five and Seven through Nine on direct appeal to the state courts, petitioner has waived the claims absent a showing of cause for his default and actual prejudice as a result of the alleged error, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at

22

750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

**D. Petitioner fails to establish cause or prejudice for the procedural default.**

As cause for the procedural default, petitioner asserts his appellate counsel was constitutionally ineffective because he failed to assert on appeal the claims raised in Grounds Two through Five and Seven through Nine of the petition. (Doc. 10 at 3-8). Ineffective assistance of appellate counsel may constitute "cause" for a procedural default unless the ineffective assistance of appellate counsel claim was itself procedurally defaulted. *See Murray,* 477 U.S. at 488; *see also Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Burroughs v. Makowski,* 411 F.3d 665, 668 (6th Cir.) (per curiam), *cert. denied,* 126 S.Ct. 653 (2005). If the Court determines that petitioner's ineffective assistance of appellate counsel claim–raised as an independent claim for relief in Ground Six of the petition–has merit, that could serve as cause to excuse the procedural default of the claims raised in the remaining grounds for relief. *Davie*, 547 F.3d at 312-13.

To establish his ineffective assistance of appellate counsel claim, petitioner must demonstrate: (1) his attorney on direct appeal made such serious errors he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) his attorney's deficient performance prejudiced the defense by undermining the reliability of the appeal result. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984). *See also McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to

eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

To satisfy the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *Id.* at 694. A showing by petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard. *Id.* at 693. However, by the same token, petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the outcome of the proceeding to establish prejudice. *See id.* Petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors." *Id.* at 695; *see also Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003); *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000).

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *Id.* at 697.

In this case, petitioner asserts that appellate counsel was ineffective because he failed to raise several claims on direct appeal which are set forth as Grounds Two, Three, Four, Five, Seven, Eight, and Nine of the petition. In evaluating the ineffective assistance of appellate counsel claim, the Court must assess the strength of the claims that appellate counsel failed to raise. *See Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal could only

be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland*, 356 F.3d at 699. "If there is a reasonable probability that [the defendant] would have prevailed on appeal had the claim been raised, we can then consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Id*. at 700.

### 1. Counsel's failure to raise the denial of funds for an expert witness at trial as alleged in Ground Two of the petition

Ground Two of the petition asserts that petitioner was deprived of equal protection and due process when the trial court denied funds for the appointment of an expert witness at trial for the purpose of analyzing and weighing the substance the State alleged to be crack cocaine. Ground Six of the petition asserts an ineffective assistance of appellate counsel claim based on counsel's failure to raise the expert witness issue on appeal.

"Indigent prisoners are constitutionally entitled to 'the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners.'" *Mason v. Mitchell*, 320 F.3d 604, 615 (6th Cir. 2003) (quoting *Britt v. North Carolina,* 404 U.S. 226, 227 (1971) (citing *Griffin v. Illinois,* 351 U.S. 12 (1956)). The problem here is that petitioner failed to establish he was indigent or that clearly established federal law required the appointment of the type of expert sought by petitioner such that counsel's failure to raise the claim amounts to ineffective assistance of counsel.

The trial court granted petitioner's original motion for the appointment of an expert, but specified in the order that petitioner "shall pay for any costs incurred to retain and secure testing and testimony of his expert." (Doc. 7, Exh. 3). Petitioner filed a motion for rehearing on the appointment of an expert at his own expense alleging that he did not have the funds to hire an

expert. (Doc. 7, Exh. 4). At trial and in response to petitioner's motion for rehearing the trial judge stated, "Well, I allowed you to seek an expert, but at the defendant's expense because he retained counsel and was no longer indigent, but you had the right to get an expert, just not at court cost. . . ." (Doc. 7, Tr. at 19).

Even assuming that the appointment of an expert witness to analyze and weigh a purported illegal substance is a "basic tool" of an adequate defense, petitioner failed to present any evidence, let alone clear and convincing evidence, disputing the trial court's finding he was not indigent. *See Brown v. Berghuis*, 638 F. Supp.2d 795, 820 (E.D. Mich. 2009) (denying petition where petitioner failed to make showing of indigency or inability to afford expense of producing witness). The trial court's determination that petitioner was not indigent for purposes of obtaining an expert at government expense is presumed correct in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004). While petitioner argued in his two motions that he was indigent, he never presented an affidavit of indigency or any other evidence supporting his claim of indigency. (Doc. 7, Exhs. 2, 4). Therefore, there is no reasonable probability petitioner would have prevailed on this claim on appeal even if counsel included the claim as an assignment of error.

Moreover, there is no clearly established federal law mandating the appointment of a non-psychiatric expert for an indigent defendant in a criminal case. "A legal principle is 'clearly established' within the meaning of [the AEDPA] only when it is embodied in a holding of [the Supreme] Court." *Thaler*, 130 S. Ct. at 1173. Petitioner argued in the state courts that the denial of funds for the appointment of an expert witness violated his equal protection and due process rights under *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). In *Ake*, the Supreme Court held that states are

obligated under the due process clause to provide an indigent defendant in a capital case with access to a psychiatric examination and assistance where the defendant's sanity is likely to be a significant issue at trial. (Doc. 7, Exh. 10 at 7). While the decision in *Ake* has been extended by some courts to require expert assistance to non-capital cases where the defendant's mental state is not at issue, *see Powell v. Collins*, 332 F.3d 376, 390 n. 5 (6th Cir. 2003) (and cases cited therein), there is no *Supreme Court* precedent that directly supports petitioner's claim of entitlement to an expert for the purpose of analyzing purported illegal substances which form the basis of the charge against the defendant. *See Pryor v. Sheets*, No. 2:07-cv-188, 2008 WL 755849, at *9-10 (S.D. Ohio March 18, 2008) ("The Supreme Court has not extended its holding in *Ake* to require the appointment at state expense of other types of defense experts."). Since the Supreme Court has not compelled the appointment of an expert witness under the circumstances presented by petitioner's case, the trial court's denial of an expert witness at government expense was not contrary to or an unreasonable application of clearly established federal law and appellate counsel was not ineffective in failing to raise this claim on appeal.

### 2. Counsel's failure to raise a confrontation clause claim as alleged Ground Three of the petition

Ground Three of the petition asserts the trial court violated petitioner's Sixth Amendment right to confrontation by admitting a lab report specifying the nature and amount of a suspected controlled substance without requiring testimony by the expert who did the testing and prepared the report. In assessing whether appellate counsel was ineffective in failing to raise this claim on appeal, the Court must consider whether counsel made an objectively unreasonable decision to raise other assignments of error instead of raising a confrontation claim directed at the admission of the lab report. *Thompson v. Warden, Belmont Correctional Institution*, ___ F.3d ___, 2010 WL 957749, at

*3 (6th Cir. March 18, 2010).  In other words, petitioner must show that his confrontation clause

claim "was clearly stronger than issues that counsel did present." *Id.* (quoting *Webb v. Mitchell,* 586

F.3d 383, 399 (6th Cir. 2009) (quoting *Smith v. Robbins,* 528 U.S. 259, 285, 288 (2000)).[2]

    There are several factors which persuade the Court that counsel's decision not to raise this

claim was not objectively unreasonable.  First, trial counsel did not object at trial to the introduction

of the lab report. (Doc. 7, Transcript Jan. 31, 2006 at 299-300).  As a result, any assignment of error

on appeal to the Ohio Court of Appeals would be subject to plain error review only, a much more

onerous standard of review on appeal.  *See Jamison v. Collins*, 100 F.Supp.2d 521, 577-78 (S.D.

Ohio 1998).[3]

---

[2]  The Sixth Circuit has identified several non-exhaustive factors to consider in assessing counsel's
effectiveness on appeal:

    A. Were the omitted issues "significant and obvious?"
    B. Was there arguably contrary authority on the omitted issues?
    C. Were the omitted issues clearly stronger than those presented?
    D. Were the omitted issues objected to at trial?
    E. Were the trial court's rulings subject to deference on appeal?
    F. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were
    the justifications reasonable?
    G. What was appellate counsel's level of experience and expertise?
    H. Did the petitioner and appellate counsel meet and go over possible issues?
    I. Is there evidence that counsel reviewed all the facts?
    J. Were the omitted issues dealt with in other assignments of error?
    K. Was the decision to omit an issue an unreasonable one which only an incompetent attorney
    would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999).

[3]  As explained by the Court in *Jamison:*

    Under Ohio law, in order to preserve an issue for appeal, counsel at trial must make a
    contemporaneous objection. Ohio R. Evid. 103.  If counsel fails to make the objection, the court
    can hear the issue on appeal only if appellate counsel demonstrates ineffective assistance of
    counsel of trial counsel for failing to preserve the error by timely objecting, *Strickland,* 466 U.S. at
    693-94, or the party or the court can show "plain error." *Long,* 53 Ohio St.2d at 97, 372 N.E.2d
    804 (1978).  The standard for "plain error" is much higher than the *Strickland* standard; the court
    must determine that the outcome would have been different but for the error. *Long,* 53 Ohio St.2d
    at 96, 372 N.E.2d 804; Ohio App. R. 52(B).

Second, the Confrontation Clause claim was not a clearly stronger claim than the others raised by counsel on appeal given the state of the law at the time of the appeal. The Confrontation Clause of the Sixth Amendment secures the right of a defendant to cross-examine an adverse witness for the purpose of uncovering possible biases and exposing the witness's motivation for testifying. *See Davis v. Alaska,* 415 U.S. 308, 316-317 (1974). The admission of hearsay statements by a declarant not present or otherwise available for cross-examination at trial may trigger concerns of a possible violation of the defendant's right under the Sixth Amendment's Confrontation Clause to confront and cross-examine the witnesses against him. *See Crawford v. Washington,* 541 U.S. 36, 50-60 (2004). In *Crawford*, the United States Supreme Court held that testimonial out-of-court statements offered against the defendant to establish the truth of the matter asserted are not admissible where the defendant had no opportunity (either before or during trial) to cross-examine the witness, regardless of the reliability of the admitted statements. *Crawford*, 541 U.S. at 68-69 (abrogating *Ohio v. Roberts,* 448 U.S. 56 (1980)). The Supreme Court stated, "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. at 68.

Petitioner's Confrontation Clause claim turns on whether the lab report to which he objects is considered "testimonial" under *Crawford*. At the time petitioner's appellate counsel filed his appeal to the Ohio Court of Appeals, state and federal courts were divided on whether records of scientific tests were considered "testimonial" under *Crawford* and therefore subject to cross-examination. *See Melendez-Diaz v. Massachusetts,* 129 S.Ct. 2527, 2543 (2009) ("Until today,

---

100 F. Supp.2d at 577-78.

scientific analysis could be introduced into evidence without testimony from the 'analyst' who produced it.  This rule has been established for at least 90 years.  It extends across at least 35 States and six Federal Courts of Appeals.") (Kennedy, J., dissenting);  *State v. Crager*, 116 Ohio St.3d 369, 879 N.E.2d 745 (2007) (recognizing a split of authority among other jurisdictions on whether scientific tests, such as DNA reports, are testimonial and holding such tests are not testimonial).[4] *See also State v. Shisler*, 2006 WL 2846339 (Ohio App. 1st Dist. 2006) (certification of breath-test machine not testimonial as contemplated by *Crawford*); *cf. State v. Smith*, No. 1-05-39, 2006 WL 846342 (Ohio App. 3rd Dist. 2006) (lab reports testimonial in nature).  In 2009, while petitioner's habeas corpus petition was pending in this federal court, the United States Supreme Court decided that the admission of a certificate of analysis showing that a substance tested positive for cocaine, without giving the defendant an opportunity to cross-examine the individual who prepared the certificate, violated the defendant's rights under the Confrontation Clause.  *See Melendez-Diaz v. Massachusetts,* 129 S.Ct. 2527 (2009).  The Supreme Court determined that the sworn certificates of state laboratory analysts were the functional equivalent of affidavits and were therefore "testimonial" in nature under *Crawford*. *Id*. at 2532.  Thus, in the absence of a showing of unavailability of the analyst and a prior opportunity for cross-examination, the admission of such evidence over the objection of the defendant violated the Sixth Amendment right of confrontation. *Id.* at 2532.

The fact that *Crawford* was not extended to include scientific lab reports as "testimonial" for purposes of the Confrontation Clause until 2009 weighs against a finding that appellate counsel

---

[4] *See, e.g., State v. Forte*, 360 N.C. 427, 435, 629 S.E.2d 137 (2006); *People v. Brown*, 9 Misc.3d 420, 801 N.Y.S.2d 709 (2005); *People v. Johnson*, 121 Cal. App.4th 1409, 18 Cal. Rptr.3d 230 (Cal. App. 1st Dist. 2004); *cf. State v. Caulfield* (Minn.2006), 722 N.W.2d 304 (2006); *Las Vegas v. Walsh*, 121 Nev. 899, 124 P.3d 203 (2005).

was ineffective for not raising the claim on appeal. Indeed, the Sixth Circuit has determined that "appellate counsel is not ineffective for failing to predict the development of the law." *Thompson*, __ F.3d at __, 2010 WL 957749, at *6.[5] To the contrary, "winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (*quoting Jones v. Barnes,* 463 U.S. 745, 751-52 (1983)). This Court cannot say that counsel failed to raise a "significant and obvious" issue on appeal. *Mapes,* 171 F.3d at 427.

Third, it appears that trial counsel's decision not to object to the lab report was a matter of trial strategy. Petitioner's defense at trial was that the drugs belonged to someone else, namely Teangela Pernell. (Doc. 7, Transcript Feb. 1, 2006 at p. 364). During closing argument, trial counsel argued, "Not my drugs. Essentially, that's the theme of this case. Either they are his drugs or they're not his drugs." *Id.* As the Supreme Court noted in *Melendez-Diaz*, "Defense attorneys and their clients will often stipulate to the nature of the substance in the ordinary drug case. It is unlikely that defense counsel will insist on live testimony whose effect will be merely to highlight rather than cast doubt upon the forensic analysis. Nor will defense attorneys want to antagonize the judge or jury by wasting their time with the appearance of a witness whose testimony defense counsel does not intend to rebut in any fashion." *Id.* at 2542. *See also State v. Pasqualone*, 121

---

[5] Citing *Lott v. Coyle,* 261 F.3d 594, 609 (6th Cir. 2001) (holding that a petitioner's appellate counsel was not ineffective for failing to make a particular argument because "we cannot conclude that Lott's counsel should have reasonably anticipated" the change in the law, even though there were conflicting opinions in the Ohio Court of Appeals on the issue); *Alcorn v. Smith,* 781 F.2d 58, 62 (6th Cir. 1986) (noting that "nonegregious errors such as failure to perceive or anticipate a change in the law ... generally cannot be considered ineffective assistance of counsel"); *see also Green v. Johnson,* 116 F.3d 1115, 1125 (5th Cir. 1997) ("[T]here is no general duty on the part of defense counsel to anticipate changes in the law."); *Spaziano v. Singletary,* 36 F.3d 1028, 1039 (11th Cir. 1994) ("We have held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop." (alterations, citations, and internal quotation marks omitted)).

Ohio St.3d 186, 903 N.E.2d 270 (2009) (counsel's decision to cross-examine a particular witness is a matter of trial strategy). It appears that trial counsel chose not to dispute whether the drugs in this case were real, but rather to focus on the identity of the owner of the drugs in defending petitioner. Thus, the failure to object to the lab report and insist on cross-examining the lab technician was consistent with petitioner's defense in the case and may be viewed as a reasonable trial tactic by counsel. Appellate counsel's failure to challenge this decision cannot be viewed as objectively unreasonable under the circumstances.

Accordingly, the undersigned concludes that appellate counsel's failure to raise on appeal the Confrontation Clause claim alleged in Ground Three of the petition did not fall below an objective standard of reasonableness under the first prong of the *Strickland* test. Petitioner has not established "cause" for his procedural default of this claim on habeas review.

### 3. Counsel's failure to raise an amendment of the indictment claim as alleged in Ground Four of the petition

Ground Four of the petition asserts that petitioner's due process rights were violated by the amendment of the indictment to change the charge from being committed within 1000 feet of a specific school to having been committed within 1000 feet of a completely different school. As respondent points out, the record shows the bill of particulars, and not the indictment, was actually amended to allege the offense was committed within 1000 feet of St. Francis Seraph School and not Vine Street Elementary School. (Doc. 7 at 22; Transcript pp. 189-191).

The Sixth Amendment to the United States Constitution secures to a criminal accused the fundamental right to be informed of the nature and cause of the accusations against him. U.S. Const. amend. VI; *Jackson v. Virginia,* 443 U.S. 307, 314 (1979) ("It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process."). While a state criminal defendant has no federal constitutional right to be charged in an indictment, *Branzburg v. Hayes,* 408 U.S. 665 (1972), "[t]he due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Koontz v. Glossa,* 731 F.2d 365, 369 (6th Cir. 1977) (citing *In Re Ruffalo,* 390 U.S. 544 (1968)). *See also Williams v. Haviland,* 467 F.3d 527, 535 (6th Cir. 2006). A defendant is given fair notice where the charging instrument describes the offense with "precision and certainty so as to apprise the accused of the crime with which he stands charged." *Koontz,* 731 F.2d at 369. An amendment of the indictment at trial which has the effect of altering the crime with which a defendant is charged constitutes a denial of due process. *Watson v. Jago,* 558 F.2d 330, 339 (6th Cir. 1977) (citing *DeJonge v. Oregon,* 299 U.S. 353, 362 (1937)).

Here, the record reflects that the amendment of the bill of particulars at trial to change the name of the school did not deny petitioner fair notice of the charges against him.  As explained by the Sixth Circuit:

> Under Ohio law–which . . . determines the elements of the offenses charged in this case–the State cannot permissibly amend an indictment, whether directly or through a bill of particulars, if the result would be that the offenses charged in the original and amended indictments are different crimes that require proof of different elements.  *See* Ohio Crim. R. 7(D);[6] *see also State v. Vitale,* 96 Ohio App.3d 695, 645 N.E.2d 1277, 1280-81 (1994); *State v. Barnecut,* 44 Ohio App.3d 149, 542 N.E.2d 353, 356 (1988).  By the same token, the State generally *may* amend an indictment or bill of particulars, even after trial for the purpose of conforming to the evidence, so long as "no change is made in the name or identity of the crime charged." Ohio Crim. R. 7(D); *see also State v. Daniel,* 97 Ohio App.3d 548, 647 N.E.2d 174, 180 (1994); *State v. Madden,* 15 Ohio App.3d 130, 472 N.E.2d 1126, 1128-29 (1984).  From these principles, it readily follows that the sorts of details supplied in a bill of particulars typically do not qualify as elements of the offenses charged in an underlying indictment.  *See, e.g., State v. Sellards,* 17 Ohio St.3d 169, 478 N.E.2d 781, 783-84 (1985) (distinguishing between an indictment, in which the State "aver[s] all material facts constituting the essential elements of an offense," and a bill of particulars, which serves to "elucidate or particularize the conduct of the accused alleged to constitute the charged offense").

*Geboy v. Brigano*, 489 F.3d 752, 762 (6th Cir. 2007) (emphasis in the original).  The amendment of the bill of particulars to specify the correct name of the school did not amount to an amendment of the indictment changing the elements of the charged offense.

The indictment in this case charged petitioner with trafficking in cocaine "in the vicinity of a school . . . in violation of Section 2925.03(A)(2) of the Ohio Revised Code. . . ." (Doc. 7, Exh. 1). "An offense is 'committed in the vicinity of a school' if the offender commits the offense . . . within

---

[6]  Ohio Crim. R. 7(D) provides as follows: "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."

one thousand feet of the boundaries of any school premises. . . ." Ohio Rev. Code § 2925.01(P). A "school" is defined as "any school operated by a board of education, any community school established under Chapter 3314. of the Revised Code, or any nonpublic school for which the state board of education prescribes minimum standards under section 3301.07 of the Revised Code, whether or not any instruction, extracurricular activities, or training provided by the school is being conducted at the time a criminal offense is committed." Ohio Rev. Code § 2925.01(Q). The statute does not make the identity of the particular school an element of the offense. The original bill of particulars specified that petitioner on May 29, 2005 was "in the vicinity of 200 E. Clifton Ave., located in Hamilton County, Ohio and within 1000 feet of Vine Elementary School. . . ."[7] The record reflects that the bill of particulars was amended to reflect only a change in the name of the school to St. Francis Seraph School. (Doc. 7, Transcript 189-191). Nothing in the indictment or the underlying statute that defines the crime with which petitioner was charged indicates the name of a particular school is an element of the offense. The amendment of the bill of particulars did not change name or identity of offense nor increase severity of offense with which petitioner was charged. Since the name of a particular school was not an element of the offense charged in Count 2 of the indictment, petitioner received sufficient notice that the charge required the State to prove beyond a reasonable doubt that he was in the vicinity of a school, regardless of the name of the school. The record does not reflect that petitioner was denied due process by the amendment of the bill of particulars at the start of the trial to correct the name of the school to conform to the evidence at trial. Petitioner has not shown how he was prejudiced by this amendment or that the decision reached on appeal would "reasonably likely have been different" had counsel raised the claim on

---

[7] *See State of Ohio v. Smith,* Case No. B0505285 (Hamilton County Common Pleas, June 30, 2005) (http://www.courtclerk.org/case_summary.asp?sec=history&casenumber=B%200505285)

appeal. *Strickland*, 466 U.S. at 695.  Therefore, petitioner has not established "cause" for his procedural default of Ground Four on habeas review.

## 4. Counsel's failure to raise a prosecutorial misconduct claim as alleged in Ground Eight of the petition.

Ground Eight of the petition alleges petitioner was deprived of a fair trial and due process when the prosecutor during closing argument to the jury "called the defense witness a liar[,] vouched for the credibility of state witnesses, specifically asking the jury to believe one police officer because he was a former Secret Service agent, and expressed his personal opinion that Petitioner was guilty, while making derogatory remarks about Appellant and the sole defense witness." (Doc. 1 at 13).

To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  "Even if the prosecutor's conduct was 'undesirable or even universally condemned,' this Court can only provide relief if the [conduct was] so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986).  The reviewing court's focus in a claim of prosecutorial misconduct is "the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982).  A prosecutor's alleged misconduct must be examined within the context of the entire trial to determine whether it deprived a defendant of a fair trial. *United States v. Young,* 470 U.S. 1, 11-12 (1985).  "Reversal is required only if the prosecutor's misconduct is 'so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant.'" *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006) (quoting *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997)).

The Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court then determines if the statements were flagrant. *Id*. The Court considers four factors in determining flagrancy: (1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant. *Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003); *Macias*, 291 F.3d at 452. *See also Darden*, 477 U.S. at 182; *Young*, 470 U.S. at 12; *Donnelly*, 416 U.S. at 646-647. Other relevant factors include whether the prosecutor manipulated or misstated the evidence, *see Darden*, 477 U.S. at 182; *Berger v. United States*, 295 U.S. 78, 84-85 (1935), *overruled on other grounds by Stirone v. United States*, 361 U.S. 212 (1960), or whether a curative instruction was given by the trial judge, *see Darden*, 477 U.S. at 182.

In the instant case, petitioner asserts the prosecutor during closing argument called his defense witness, Teangela Pernell, a liar. In contrasting the conflicting stories of the police officers with that told by Teangela Pernell, the prosecutor commented on Ms. Pernell's testimony that she admitted the drugs belonged to her, went to the police to confess, and was told "don't mess with my case . . . go away." (Tr. 360). The prosecutor stated:

> Now, how reasonable is that? How probable is that? . . . Is it reasonable in light of
> the fact that she is a convicted liar? She was convicted of falsification in 1999,
> convicted of falsification in 2004. She was convicted of falsification where she
> caused another person to be arrested for something that she did. How reasonable is
> it that out of the goodness of her heart she decides to take responsibility one time in

her life for something she did?  It is not reasonable.  This is what I call unreasonable doubt."

(Tr. 360-61).

There is a distinction between calling a defense witness a liar where "significant evidence offered at trial supported the prosecutor's statements" and where "statements by the prosecutor were not coupled with a more detailed analysis of the evidence actually adduced at trial." *Cristini v. McKee*, 526 F.3d 888, 902 (6th Cir. 2008) (quoting *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005)).  Under the first scenario, the prosecutor argues from the evidence that certain testimony should not be believed. *Cristini*, 526 F.3d at 902.  Under the second scenario, the prosecutor's argument conveys "an impression to the jury that they should simply trust the State's judgment that . . . the defendant's witnesses were non-credible, if not perjurious." *Id.* (quoting *Hodge*, 426 F.3d at 378-79).

Here, the prosecutor's statement was supported by the evidence in the record that Ms. Pernell should not be believed because she had been convicted of crimes of dishonesty which legitimately impacted her credibility. (Doc. 7, Tr. 327-328).  The jury was not asked to simply trust the prosecutor that Ms. Pernell was not believable.  The "liar" comment was isolated and in context was not improper. *Cristini,* 526 F.3d at 902.

Petitioner also contends the prosecutor improperly vouched for the credibility of the police officers.  The prosecutor stated:

> The question you have to ask yourself is:  Are you going to believe the testimony of two police officers who have demonstrated no motive to lie, one who is a former veteran of the U.S. Secret Service, who are– they're trained when they're getting out of their car to look.  What are you thinking when you're a police officer and you're getting out of a car and you're going to stop somebody in a high drug, high crime

> area?  That's the first thing that you're going to do for your safety.  You're going to look around to make sure that there are no threats near you when you approach the subject.

(Doc. 7, Tr. 362).

"Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness's credibility." *United States v. Emuegbunam,* 268 F.3d 377, 404 (6th Cir. 2001).  *See Hodge,* 426 F.3d at 378.  "[P]rosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcibly assert reasonable inferences from the evidence.  But, they cannot put forth their opinions as to credibility of a witness, guilt of a defendant, or appropriateness of capital punishment." *Bates v. Bell,* 402 F.3d 635, 646 (6th Cir. 2005).  Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999); *see also United States v. Emuegbunam,* 268 F.3d 377, 404 (6th Cir. 2001).

When viewed in context, the isolated reference to one of the officers being a veteran of the Secret Service was not an expression of a personal belief in the officer's credibility or an implication of special knowledge of facts not before the jury.  On cross-examination, Officer Rees testified he had experience as an agent with the United States Secret Service and was trained in surveillance tactics. (Doc. 7, Tr. 223).  In context, the prosecutor's comment appears to be an argument that the jury could reasonably infer that the officers' explanation for their actions–making a detailed survey of the surrounding area and neighborhood upon making their initial stop–was credible because those actions were consistent with their training.  The prosecutor's remark was

based on the evidence and his argument was not improper.

Petitioner also contends the prosecutor expressed an opinion that petitioner was guilty and made derogatory remarks about petitioner and his witness. However, petitioner has failed to point to anything specific in the record supporting this claim. The Court's review of the closing argument reveals that the prosecutor commented on the reasonable inferences the jury could draw from the conflicting testimony of the State and defense witness.

Even assuming these comments of the prosecutor during closing argument were improper, *Macias*, 291 F.3d at 452, they were not so flagrant as to render the entire trial fundamentally unfair. The prosecutor's comments occurred during closing argument and petitioner does not contend that the prosecutor acted inappropriately at any other point during the trial. Because the comments were isolated, this factor does not weigh in petitioner's favor. *Bowling*, 344 F.3d at 512. Nor has petitioner presented any evidence suggesting that the prosecutor intentionally made any improper statements. The absence of any evidence of intent in the record weighs against a finding of flagrancy. *Id*.

In light of the foregoing analysis indicating that the isolated comments by the prosecuting attorney did not rise to the level of prosecutorial misconduct, the underlying basis for petitioner's claim of ineffective assistance of appellate counsel is without merit. Thus, the Court cannot conclude that but for appellate counsel's deficient performance, there is a reasonable probability that petitioner would have prevailed on a prosecutorial misconduct claim on appeal. Therefore, petitioner has failed to establish "cause" for his procedural default based on appellate counsel's failure to raise a prosecutorial misconduct claim on direct appeal.

**5. Counsel's failure to challenge petitioner's sentence on appeal as alleged in Ground**

**Nine of the petition.**

Petitioner contends appellate counsel's failure to challenge his sentence on appeal constitutes ineffective assistance of counsel. Ground Nine of the petition asserts that petitioner's Sixth Amendment right to a trial by jury was violated when the trial court imposed a sentence which exceeded the presumptive three-year statutory maximum for a first degree felony. Petitioner contends that because the trial judge, and not the jury, made the factual determinations necessary to enhance his sentence beyond the presumptive statutory maximum, his sentence is unconstitutional under *Blakely v. Washington*, 542 U.S. 296 (2004). Petitioner also contends that when he was resentenced in 2008 under Ohio's sentencing statute as modified by the Supreme Court of Ohio's decision in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, *cert. denied,* 127 S.Ct. 442 (2006), application of the *Foster* remedy to his resentencing violated his rights under the Ex Post Facto and Due Process Clauses of the United States Constitution. (Doc. 7, Exh. 17 at 9).

In *State v. Foster*, the Supreme Court of Ohio held that several provisions of Ohio's felony sentencing statute were unconstitutional pursuant to the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004). In *Blakely,* the Supreme Court determined that an enhanced sentence imposed by a judge under a state's sentencing statute, which was based on facts neither admitted by the defendant nor found by a jury, violated the Sixth Amendment right to trial by jury under the United States Constitution. The Supreme Court in *Blakely* reaffirmed its holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000): "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely,* 542 U.S. at 301 (quoting *Apprendi*, 530 U.S. at 490). Importantly, the *Blakely* Court clarified that "the 'statutory maximum' . . . is the

maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Id.* at 303 (emphasis in the original). "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id*. at 303-304 (emphasis in the original).

The reasoning of *Blakely* was extended by the Supreme Court to the United States Sentencing Guidelines in *United States v. Booker*, 543 U.S. 220 (2005), which held that the Sixth Amendment as construed in *Blakely* applied to the Federal Sentencing guidelines and thus any fact (other than a prior conviction) that increases a defendant's sentence beyond the statutory maximum must be presented to a jury and proved beyond a reasonable doubt. *See Booker*, 543 U.S. at 244. The *Booker* Court held that the Sentencing Guidelines were unconstitutional insofar as they mandated that a defendant's sentence be increased based on facts not found by the jury beyond a reasonable doubt. *Id.* at 243-44. To remedy the Sixth Amendment violation, the Supreme Court severed two sections of the Sentencing Reform Act, effectively making the Sentencing Guidelines advisory. *See id.* at 244-264 (severing and excising 18 U.S.C. § 3553(b)(1) & § 3742(e)).

On February 27, 2006, the Supreme Court of Ohio in *State v. Foster,* 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), held that certain provisions of Ohio's sentencing statute were unconstitutional under *Blakely* because they mandated additional judicial fact-finding before the imposition of (1) more than the minimum term for those who have never served a prison term; (2) the maximum prison term; (3) consecutive prison terms; and (4) repeat-violent-offender and major-drug-offender penalty enhancements. *See id.* at 19-25, 845 N.E.2d at 490-94. Noting that the "overriding goals of Ohio's sentencing scheme are to protect the public and punish the offender," and that the Ohio

legislature "delegated the role of determining the applicability of sentencing factors to judges rather than to juries to meet these overriding goals," the Supreme Court of Ohio determined as in *Booker* that the proper remedy was to sever the *Blakely*-offending portions of the statutes and grant trial courts "full discretion to impose a prison sentence within the statutory range" without having to make findings or give reasons for imposing maximum, consecutive, or more than minimum sentences. *Id.* at 25-30, 845 N.E.2d at 494-98. Following the severance of the unconstitutional portions, the resulting Ohio sentencing statutes eliminated the presumptions in favor of minimum and concurrent sentences and permitted courts to sentence a defendant to any term within a crime's sentencing range or to consecutive sentences without making findings of fact.

When petitioner was indicted in 2005, Ohio's sentencing statute, Ohio Rev. Code § 2929.14(B), required a judicial finding "that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others" to justify the imposition of more than the minimum sentence. Under Ohio Rev. Code § 2929.14(C), the maximum prison term could be imposed upon offenders who, inter alia, "committed the worst forms of the offense" or "pose the greatest likelihood of committing future crimes."

When petitioner was resentenced in October 2008 under the new *Foster* sentencing scheme, the trial judge had full discretion to impose any prison sentence within the statutory range for any reason or no reason, without having to make findings for imposing more than minimum, maximum, or consecutive sentences on petitioner. *Foster,* 109 Ohio St.3d at 25-30, 845 N.E.2d at 494-98; *see also Villagarcia v. Warden,* __ F.3d __, 2010 WL 1068203, at *7 (6th Cir. March 25, 2010). The State was under no burden "to prove *anything* before the court could select any sentence within the

appropriate sentencing range." *Wright v. Lazaroff,* 643 F. Supp.2d 971, 1002 (S.D. Ohio 2009) (quoting *Wentling v. Moore*, 2008 WL 2778510, at *8 (N.D. Ohio July 14, 2008) (emphasis in the original)).

Petitioner's felony one conviction for trafficking in cocaine subjected him to a sentence between three and ten years. *See* Ohio Rev. Code § 2929.14(A)(1). Petitioner was sentenced to a term of imprisonment of ten years. The trial judge's sentence on the offense was within the statutory range, did not exceed the maximum sentence permitted by the range, and therefore did not violate *Blakely*.

Petitioner nonetheless argues that the application of the *Foster* sentencing scheme had an impermissible *ex post facto* effect on his sentence. As explained above, pursuant to *Foster*, the sentencing court may impose non-minimum, maximum, and consecutive terms of imprisonment in its discretion without making any findings of fact. 109 Ohio St.3d at 30, 845 N.E.2d 498. Petitioner's argument suggests that since the indictment was issued in 2005, prior to the *Foster* decision, he was entitled to be sentenced under the pre-*Foster* sentencing scheme in existence at the time he committed his offenses in 2005 which, under *Blakely*, meant that the "maximum" sentence that he could receive was three years on the felony one offense. Petitioner argues that *Foster* resulted in the increase of his sentence from the presumptive minimum sentences of three years without specific findings of fact and constitutes the infliction of a greater punishment than the law allowed for the crimes when they were committed. (Doc. 7, Exh. 17 at 9).

Under the Ex Post Facto Clause of the United States Constitution, a state is prohibited from passing a law that (1) "makes an action done before the passing of the law, and which was innocent when done, criminal;" (2) "aggravates a crime, or makes it greater than it was, when committed;"

(3) "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed;" and (4) "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Rogers v. Tennessee,* 532 U.S. 451, 456 (2001) (quoting *Calder v. Bull,* 3 U.S. 386, 390 (1798) (Chase, J.)); *see also* U.S. Constit. Art. I, § 10. Ex Post Facto Clause concerns are not triggered in the case-at-hand because "by its very text [the clause] applies only to a limitation on the powers of the legislature and not to judicial decisions." *McGhee v. Konteh,* No. 1:07cv1408, 2008 WL 320763, at *10 (N.D. Ohio Feb. 1, 2008) (unpublished); *see also Rogers,* 532 U.S. at 456, 460 (refusing to extend the strictures of the Ex Post Facto Clause to judicial decisions "through the rubric of due process").

Nevertheless, the Fourteenth Amendment's Due Process Clause does limit *ex post facto* judicial decision-making. *Rogers,* 532 U.S. at 456. Although the Due Process Clause does not incorporate the specific prohibitions of the Ex Post Facto Clause, retroactive judicial decision-making must comport with "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Id.* at 459 (citing *Bouie v. City of Columbia,* 378 U.S. 347, 351, 352, 354-55 (1964)); *see also United States v. Barton,* 455 F.3d 649, 654 (6th Cir.) ("when addressing *ex post facto*-type due process concerns, questions of notice, foreseeability, and fair warning are paramount"), *cert. denied,* 127 S.Ct. 748 (2006).

Here, petitioner is unable to prevail on any claim that he lacked sufficient notice or "fair warning," because *Blakely, Booker,* and *Foster* did not change the elements necessary to convict petitioner of the trafficking in cocaine charge, and petitioner was aware of the potential penalties he

faced on the charge both before and after *Foster*. *See McGhee, supra,* 2008 WL 320763, at *11. In 2005, when petitioner's crime was committed, the then-applicable provisions of Ohio's sentencing statute provided sufficient notice to petitioner that the trial court had discretion to impose non-minimum, maximum sentences as long as the court made certain findings consistent with Ohio Rev. Code §§ 2929.14(B) and (C). In other words, petitioner was on notice that he faced somewhere between three and ten years for the commission of a first degree felony so long as the sentencing judge made the requisite findings. Similarly, post-*Foster,* petitioner knew that the trial court retained the discretion to impose a sentence within the statutory range of three to ten years. Therefore, both before and after *Foster,* petitioner was on notice and thus had "fair warning" of the potential penalties he faced and of the trial court's discretion to impose those penalties. As one Ohio district court reasoned in rejecting an Ohio prisoner's *ex post facto*-type due process claim challenging his re-sentencing under *Foster* to the same maximum prison term that had been imposed pre-*Foster*:

> Prior to *Foster,* the trial court made additional findings of fact consistent with Ohio Revised Code § 2929.14(C) and sentenced Petitioner to the maximum sentence available under Ohio Revised Code § 2929.14(A)(1): ten years. Under constitutional law as Ohio courts interpreted it at the time, Petitioner was not entitled to . . . proof beyond a reasonable doubt as to the additional findings of fact required by Ohio Revised Code § 2929.14(C).

> Now, Petitioner alleges that his due process rights were violated because he has a right to . . . proof beyond a reasonable doubt under the new law arising from *Foster*. After *Foster,* the elements of the crime for which Petitioner was charged were unaffected. . . . Further, Petitioner's claim of a right to . . . trial by jury regarding sentencing factors lacks merit because, following *Foster,* the trial judge maintains discretion under Ohio Revised Code § 2929.14(A)(1) to impose a sentence in the range of three to ten years for a first degree felony based upon facts admitted by the defendant or found by a jury. Therefore, the statutory maximum for *Apprendi* purposes is ten years, as Petitioner believed it was before *Foster*.

> Since the *Foster* decision does not change the elements necessary to convict
> Petitioner or the potential maximum sentence that Petitioner faced for a first degree
> felony, *Foster* does not raise an *ex post facto*-type due process violation.  Moreover,
> the trial judge's application of *Foster* to Petitioner's case did not violate *Apprendi*
> because he did not sentence Petitioner beyond the statutory maximum.

*McGhee, supra,* 2008 WL 320763, at *11.

The undersigned notes that the *ex post facto* claim asserted by petitioner has been

thoroughly discussed and uniformly rejected by this Court and other federal district and state courts

in Ohio.  *See Wright v. Lazaroff,* 643 F. Supp.2d 971, 1003-1005 (S.D. Ohio 2009) (Barrett, J.;

Hogan, M.J.) (and cases cited and quoted therein); *Smith v. Brunsman,* 626 F. Supp.2d 786, 793-

795 (S.D. Ohio 2009) (Barrett, J.; Black, M.J.); *Kelley v. Brunsman,* 625 F. Supp.2d 586, 606-608

(S.D. Ohio 2009) (Spiegel, J.; Hogan, M.J.). [8]  *See also Hooks v. Sheets,* No. 1:07cv520, 2008 WL

4533693, at *3-5, *13-19 (S.D. Ohio Oct. 3, 2008) (Beckwith, J.; Hogan, M.J.) (unpublished) (and

cases cited therein).

The same reasoning contained in these decisions rejecting *ex post facto* challenges to *Foster*

---

[8]  *See also Rettig v. Jefferys,* 557 F. Supp.2d 830, 841 (N.D. Ohio 2008) (Polster, J.; McHargh, M.J.) (citing
Ohio cases "uniformly reject[ing] *ex post facto* challenges to the *Foster* decision"); *Smith v. Welch,* No. 3:08cv2917,
2009 WL 2167863, at *1-3, *13-16 (N.D. Ohio July 17, 2009) (Economus, J.; Vecchiarelli, M.J.) (unpublished);
*Schaub v. Brunsman,* No. 1:08cv2522, 2009 WL 2143746 (N.D. Ohio July 16, 2009) (Boyko, J.; Perelman, M.J.)
(unpublished); *Mason v. Brunsman,* No. 1:07cv1020, 2009 WL 2169035, at *8-9, *34-37 (S.D. Ohio July 16, 2009)
(Spiegel, S.J.; Black, M.J.) (unpublished); *Clagg v. Wolfe,* No. 2:08cv144, 2009 WL 1424427, at *1-6 (S.D. Ohio
May 20, 2009) (Sargus, J.) (unpublished); *Pena v. Cooper,* No. 2:08cv195, 2009 WL 1324046, at *1, *16-19 (S.D.
Ohio May 12, 2009) (Smith, J.; Abel, M.J.) (unpublished); *Newman v. Wilson,* No. 5:08cv483, 2009 WL 1212262, at
*1, *11-12 (N.D. Ohio Apr. 30, 2009) (Oliver, J.; Perelman, M.J.) (unpublished) (and cases cited therein);
*Trewartha v. Brunsman,* No. 2:07cv981, 2009 WL 614963, at *1, *10-13 (S.D. Ohio Mar. 5, 2009) (Holschuh, J.;
Abel, M.J.) (unpublished); *Haning v. Wolfe,* No. 2:07cv1093, 2009 WL 541156, at *1, *3-5 (S.D. Ohio Feb. 27,
2009) (Watson, J.; Abel, M.J.) (unpublished) (and cases cited therein). *Cf. Turner v. Warden, Noble Corr. Inst.,* No.
1:08cv309, 2009 WL 866841, at *2, *9 (S.D. Ohio Mar. 31, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished)
(although the court held that *Foster* did not apply to the petitioner's sentence, it noted that "both the federal courts
and Ohio courts have rejected *ex post facto* challenges to the *Foster* decision"); *Collins v. Warden, Chillicothe Corr.
Inst.,* No. 3:06cv256, 2008 WL 728390, at *1, *8-9 (S.D. Ohio Mar. 17, 2008) (Rice, J.; Merz, M.J.) (unpublished)
(holding that "[w]hile Petitioner's original sentence violated *Blakely,* his new sentence [under the *Booker* remedy
adopted in *Foster*] did not," and that "[n]othing in the United States Constitution calls such a sentence into
question").

applies to the case-at-hand. *Foster* did not change the elements of the crime of which petitioner

was convicted and petitioner had fair warning that he faced the same penalty ranges for the offense

both before *Foster* (when he committed the offenses) and after *Foster*. *Cf. McGhee v. Konteh,* No.

1:07cv1408, 2008 WL 320763, at *11 (N.D. Ohio Feb. 1, 2008) (unpublished). *See also Garrett v.*

*Warden*, No. 3:09-cv-058, 2009 WL 1416047, at *4 (S.D. Ohio May 19, 2009) (Merz, M.J.)

(holding petitioner has no "reliance interest" in pre-*Foster* sentencing law). Thus, petitioner was

not deprived of his due process rights when the trial court resentenced him to a non-minimum,

maximum sentence for trafficking in cocaine.

Accordingly, petitioner cannot demonstrate he was prejudiced by appellate counsel's failure

to raise a *Blakely* sentencing claim on appeal. Petitioner has not established "cause" for his

procedural default of Ground Nine on habeas review.

### 6. Counsel's failure to raise an ineffective assistance of trial counsel claim as alleged in Ground Five of the petition

Ground Five of the petition asserts that trial counsel was ineffective by failing to object to

the prosecutor's misconduct during final argument (Ground Eight), to the admission of the lab

report (Ground Three), and to the imposition of an unlawful and unconstitutionally enhanced

sentence under *Blakely* (Ground Nine).[9] As explained above, these claims were without merit and

were not reasonably likely to alter the outcome of petitioner's criminal proceeding. *Strickland*, 466

U.S. at 695. Therefore, petitioner's appellate counsel cannot be faulted for failing to challenge trial

---

[9] Any alleged *Blakely* error at petitioner's original sentencing hearing in 2005 would be moot because petitioner was resentenced in 2008 under the *Foster* sentencing scheme. In any event, trial counsel would not be ineffective for failing to raise a *Blakely* objection at the original sentencing hearing. At the time of the hearing, the First District Ohio Court of Appeals had rejected *Blakely* challenges and any *Blakely* objection by trial counsel would have been futile. Trial counsel's failure to anticipate the Ohio Supreme Court's decision in *Foster* which overruled First District precedent was not unconstitutionally unreasonable. *See Thompson v. Warden, Belmont Correctional Institution*, __ F.3d __, 2010 WL 957749, at *5 (6th Cir. March 18, 2010).

counsel's performance on appeal. Petitioner's ineffective assistance of appellate counsel claim does not provide "cause" for the procedural default of Ground Five of the petition.

Since the underlying substantive claims asserted in Grounds Two, Three, Four, Five, Eight, and Nine have no merit, petitioner cannot demonstrate appellate counsel was ineffective for failing to raise those claims on appeal. As such, the ineffective assistance of appellate counsel claim which is raised as an independent claim in Ground Six of the petition must be denied and petitioner cannot assert the ineffective assistance of appellate counsel as cause for his procedural default of his other grounds for relied. *See Edwards*, 529 U.S. at 452; *Davie*, 547 F.3d at 312.

Finally, petitioner asserts there was insufficient evidence to support his conviction in Ground Seven of the petition. Unlike his other procedurally defaulted claims, petitioner does not allege that appellate counsel was ineffective in failing to raise this insufficiency of the evidence claim on appeal. Therefore, the Court declines to review the underlying merits of this claim in connection with petitioner's assertion of ineffective assistance of appellate counsel.

Petitioner has failed to demonstrate either cause for the procedural default of the claims alleged in Grounds Two, Three, Four, Five, Seven, Eight, and Nine of the petition or actual prejudice resulting from the alleged constitutional violations. Nor has petitioner shown that if his claims are not considered on the merits a "fundamental miscarriage of justice" will occur, that is, that the alleged constitutional violations "probably resulted in the conviction of one who is actually innocent" of the crimes charged. *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *cf. Souter v. Jones,* 395 F.3d 577, 597-602 (6th Cir. 2005). It is well-established that "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States*, 523 U.S. 614,

623 (1998)).

To establish a credible claim of actual innocence, petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324; *see also Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. 2003). Petitioner has failed to present any new, reliable evidence showing he is actually innocent of trafficking in cocaine. Accordingly, any federal claims associated with Grounds Two, Three, Four, Five, Seven, Eight, and Nine of the petition are procedurally defaulted and waived for purposes of federal habeas review.

## IT IS THEREFORE RECOMMENDED THAT:

1. The petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to Grounds Two, Three, Four, Five, Seven, Eight, and Nine of the petition which this Court has concluded are waived and thus barred from review on procedural grounds because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the *Slack* standard.[10]

3. A certificate of appealability should not issue with respect to Grounds One and Six of the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

4. The Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, **DENY** petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  4/13/2010          s/Timothy S. Black
                                          Timothy S. Black
                                          United States Magistrate Judge

---

[10] Because this Court finds that petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner stated a valid constitutional claim. *See Slack,* 529 U.S. at 484.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CHARLES SMITH,                              Civil Action No. 1:09-cv-251
       Petitioner,

                                          Dlott, J.

       vs.                                  Black, M.J.

WARDEN, LEBANON CORRECTIONAL
INSTITUTION,
       Respondent.

**NOTICE**

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation **WITHIN 14 DAYS** after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed **WITHIN 14 DAYS** after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).